Filed 11/24/15  P. v. Smith CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075691 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00616) |
| v. | |
| PAUL SMITH, | |
| Defendant and Appellant. | |

A jury found defendant Paul Smith guilty of two counts of first degree burglary involving the same residence on different occasions.  The trial court sustained a recidivist allegation, and denied a request to exercise its discretion to strike the finding pursuant to Penal Code section 1385.[1]  It then sentenced defendant to state prison for 15 years eight months.

---

[1]  Undesignated statutory references are to the Penal Code.

1

Defendant contends on appeal that he was entitled to an instruction on the lesser related offense of trespassing because of the manner in which the prosecution alleged the offense in the amended information. He also claims the trial court abused its discretion in declining to strike the recidivist finding. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning of December 14, 2012, the resident grandmother of the household stopped her then 17-year-old granddaughter (who also lived in the home) as she was getting out of the second-floor bathroom to ask if the teen had attempted to enter the grandmother's downstairs bedroom earlier that morning; the grandmother had seen a shadowy figure go through the back door after she called out when her bedroom door started to open. The teen went downstairs and found that the television cables in the living room were disconnected. The teen went to her upstairs bedroom and found four of her handbags were missing, one of which had her identification and a few dollars. A first-floor rear sliding door was open, and one of the bags was in the yard. Two others were in a neighbor's yard. The teen never recovered the bag that had her identification and money. She did not bother reporting the incident to the police, because nothing had come of her family's report a few years before of a previous burglary.

On December 27, the grandmother went into the kitchen on wakening and saw a person climb in through the window and stand there. When she called out, the person scrambled out the window. The teen's mother came down the stairs in time to see a man climbing out the window. The teen, who remained in her room, called the police.

A responding officer encountered defendant near the victims' home riding on a skateboard. His hooded sweatshirt was similar to that which the victims had described, and his shoes matched a print on a chair outside the kitchen window and on the windowsill. Neither the grandmother nor the mother could identify defendant from his

2

facial features. The only usable prints recovered from the home did not match defendant's.

The teen was familiar with defendant because he dated the older sister of one of her friends when she was a freshman in 2009, and she had "hung out" with him at the time. However, she did not have any contact with him in the years since, because she was afraid of him for unspecified reasons. On cross-examination, she specifically denied calling out to defendant as she walked past his house a couple of weeks before the burglaries.

Defendant was on parole, and wore a tracking device. This device indicated he was in the proximity of the victims' home on the two dates at the time of the burglaries.

In January 2013, defendant made a phone call from jail to his children's mother (who was the older sister of the teen victim's friend mentioned above.) In the course of the call, he declared his devotion to her and apologized "for all of this," stating that he had wanted to be able to provide more at Christmastime.

## DISCUSSION

### 1.0 Defendant Was Not Entitled to an Instruction on Trespass as a Lesser Offense

A trial court must instruct on a requested lesser offense if there is substantial evidence that would absolve a defendant of guilt of the greater offense but not the lesser. We review the question de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584 (*Manriquez*).)

The amended information described the two offenses as "unlawfully enter[ing] an inhabited dwelling house . . . with the intent to commit larceny and any other felony." Defendant argued at trial that this is the equivalent of alleging that he entered the home without the consent of the owners, making trespass a lesser included offense. The trial court did not directly address the legal question; it concluded there was an absence of any

3

substantial evidence for finding the offense to be lesser than the greater offense. Defendant renews the argument on appeal.

Defendant concedes trespass is not a lesser included offense under the statutory elements of burglary, because one can commit burglary even with consent to enter a residence. (*People v. Birks* (1998) 19 Cal.4th 108, 118, fn. 8.) Defendant further recognizes that dicta in that same footnote rejected the proposition (which Birks had not himself raised) that "the allegations . . . necessarily include . . . trespass" in stating that Birks " 'did willfully and unlawfully enter a commercial building . . . with intent to commit larceny and any felony.' " (*Ibid*.)[2]

Defendant purports to find a distinction in *Birks* because it involved second degree commercial burglary rather than first degree residential burglary. We do not discern the difference. The point of the dictum is that alleging "unlawful" entry is *not* the equivalent of alleging entry *without consent*, which would implicate trespass. Defendant points out that a legal dictionary defines "unlawful entry" as "intentionally entering another's real property, by fraud or other illegal means, without the owner's consent. Cf. TRESPASS (1)." (Garner, Black's Law Dict. (10th ed. 2014) p. 650, col. 2 (Garner).)[3] However, we are not aware of any authority under which our interpretation of language in accusatory pleadings is subject to a dictionary meaning contrary to the intimations of our Supreme Court.

---

[2] In dictum in an earlier case in another footnote eight, the Supreme Court had suggested that the language in the accusatory pleading would support trespass as a lesser offense, but it did not include the language at issue in the opinion and therefore does not provide any guidance on the basis for this conclusion. (*People v. Wetmore* (1978) 22 Cal.3d 318, 327, fn. 8.)

[3] To quote the cross-referenced definition, "trespass" is the "wrongful entry on another's real property." (Garner, *supra*, p. 1733, col. 2.)

In any event, we do not need to belabor this point. Whether viewed through the lens of an absence of substantial evidence to acquit defendant of burglary (*Manriquez*, *supra*, 37 Cal.4th at p. 584) or the lack of any reasonable probability the jury would have done so (*People v. Beltran* (2013) 56 Cal.4th 935, 955), the absence of an instruction on trespass as a lesser offense is immaterial. In closing argument, defense counsel focused on defendant's intent on entry into the residence (assuming there was sufficient proof that defendant in fact entered the residence). "You're probably not going to like what I have to say, but it doesn't make it any less supported by the evidence. I submit to you the reason [defendant] went into that house on both of those occasions . . . [was] with the intent to spy, to peep" on the teenage resident. Counsel argued this inference was supported by defendant's failure to take anything more than the teen victim's handbags, and his choice to enter the home when people were likely to be there. This, however, was not a reasonable alternate inference but utter speculation. (*People v. Sakarias* (2000) 22 Cal.4th 596, 620 [speculation is insufficient basis for instructing on lesser offense].) The teen victim testified she had not been in contact with defendant in any way since 2009; defendant's phone call to his children's mother demonstrated his devotion to his family and his desire to provide more for them; and there is an absence of any evidence of defendant's interest in the teen victim. The argument about the time of day would apply equally to a desire to "peep" as well as to burglarize, and the failure to take anything more simply reflects the lack of time to complete the task before he aborted his intrusion. Mere trespass was not a viable alternative on the state of the record.

## 2.0  It Was Not an Abuse of Discretion to Decline to Strike the Recidivist Finding

Before sentencing, defense counsel filed an invitation to the trial court[4] to dismiss the recidivist finding. It set out the circumstances of defendant's troubled childhood after

---

[4] This is the correct terminology. *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530 held that the trial court has the power under section 1385 sua sponte or on

his mother's death in 2000 when he was 11 years old, his lack of permanent employment, and his lack of a high school degree. It asserted that defendant was subject to anxiety and depression, but had avoided substance abuse. As of January 2014, he had been involved with the mother of his four children for six years. The filing assumed the trial court was familiar with the circumstances of his present offenses. Regarding defendant's criminal record, it acknowledged his multiple violations of probation and (after his prison term) parole for a 2008 burglary (in which the record was unclear whether it was defendant or his accomplice who actually entered the home, and in which actual violence was not involved), his 2007 misdemeanor conviction for molesting his 14-year-old stepsister, and his 2012 misdemeanor conviction for failing to register his address as a sex offender. In his response, the prosecutor pointed out that from the time of his sentence to prison in 2009, defendant had not gone more than nine months without a violation or a new offense (spending roughly 15 months in custody over the prior three years); the present burglaries occurred three months after defendant's most recent period of custody (at a time, we note, when he was wearing a tracking device).

The trial court found that defendant's record demonstrated an inability to follow rules despite many opportunities to turn his life around. It also believed defendant (who had addressed the court) tended to deflect blame for his actions. Other than his youth and his family, the trial court could not find anything to justify exercising its discretion to strike the finding (his difficult childhood not being any justification for his poor choices).

A trial court may exercise its discretion to strike a recidivist finding if, *and only if*, a defendant can be "deemed outside the . . . spirit" of the statute, giving "preponderant

motion of the *prosecution* to dismiss a recidivist finding in the interests of justice. A defendant therefore can *invite* the trial court to exercise its power sua sponte, but cannot "move" the court to act sua sponte. (*People v. Carmony* (2004) 33 Cal.4th 367, 374-375 (*Carmony*) [may "invite," which obligates court to review any proffered evidence, and allows appellate review].)

weight" to inherent statutory factors (such as the background, character, and prospects of a defendant, as well as the nature and circumstances of the present and previous felony convictions) and ignoring any factors extrinsic to the statute. (*People v. Williams* (1998) 17 Cal.4th 148, 159, 161.)

The burden is on defendant to demonstrate that the trial court's decision was unreasonable, rather than being one of alternative reasonable readings of the facts before the court. This requires a defendant to overcome a "strong" presumption on appeal that a court's *denial* of the request to exercise discretion is proper. (*Carmony*, *supra*, 33 Cal.4th at pp. 377, 378.) *Only* where the criteria undisputedly favor a defendant (i.e., where the facts essentially as a matter of law establish entitlement to relief) would the denial of a request to exercise its power to strike be an abuse of a court's discretion. (*Id*. at p. 375.)

Defendant takes the not uncommon tack of reiterating the arguments he made in the trial court and declaring the result to be an abuse of discretion without any demonstration of the irrationality or arbitrary nature of the trial court's exercise of its informed discretion. It is immaterial that the present or prior burglaries did not involve any actual violence, or that his criminal record is not even longer. Society, in the person of the trial judge, is not *compelled* to define deviancy downward through the toleration of violations of even its lesser mandates. Even with a tracking device on his ankle, defendant demonstrated his inclination to break the law. Defendant has molested a sibling in his home and broken into the homes of strangers and acquaintances. He has not manifested any inclination with his present resources to change his ways, or identified any feasible plan to do so. As the trial court's resolution is not unreasonable, we reject defendant's claim of an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

                                                           BUTZ_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____MAURO_____, J.

8